

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. D. W. Stakes, Cashier
Texas Prison System
Huntsville, Texas

Dear Mr. Stakes:

Opinion No. O-1100
Re: Comptroller of Public Accounts
is unauthorized to approve for
payment a claim for premium on
an insurance policy out of an
appropriation made to Texas Pri-
son System to pay "liability in-
surance premiums" when the pol-
icy is for both casualty and
liability insurance.

We acknowledge receipt of your letter of recent date, together with Policy No. 21479 issued to Texas Prison Board, etc., by The Hartford Steam Boiler Inspection and Insurance Company of Hartford, Connecticut.

You advise that the Comptroller has refused to pass the claim of the company for the amount of the premium to voucher, assigning the reason therefor that this office had recently ruled such claims should not be approved by him for payment unless there was a specific appropriation for that purpose. You ask if this claim is one that may be legally approved for payment out of the current appropriation made to the Texas Prison System for "general support and maintenance; also includes transportation, recapture, contingent expenses and liability insurance premiums."

This office on February 14, 1939, in Opinion No. O-201, held that the State Board of Health was unauthorized to insure State property in its possession against loss by fire unless a specific appropriation had been made for that purpose. That opinion was bottomed upon the proposition that the Legislature had in Senate Concurrent Resolution No. 3, passed at the Second Called Session of the 37th Legislature, declared it to "be the fixed policy of this State to carry its own insurance upon State buildings and contents, and that no

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT



insurance policies shall be taken out upon any of the
public buildings and contents thereof ..."

Opinion No. O-842, dated May 25, 1939, holds that
the Commissioner of Agriculture has no authority, in the
absence of a specific appropriation for such purpose, to
pay the premium on a fire or casualty insurance policy
issued on certain livestock owned by the State.

An available specific appropriation to pay the pre-
mium on any kind of a policy issued in favor of the State
would amount to a subsequent declaration of policy by the
Legislature and would, to that extent, repeal the policy
announced by the Resolution above referred to.

In the instant case, there is a specific appropria-
tion made to the Texas Prison System for the purpose of
paying "liability insurance premiums." It, therefore,
necessarily follows that if the policy on which the premium
is sought to be paid from said appropriation is solely a
policy of that character, your question may be answered
in the affirmative.

For the purpose of this opinion, the material provi-
sions of the policy are:

"The Hartford Steam Boiler Inspection and Insurance
Company of Hartford, Connecticut ...

"In consideration of $2,172.30 premium does
hereby agree with Texas Prison Board and/or Texas
Prison System and/or Its Elected or Appointed Of-
ficers, whose address is Huntsville, Texas, res-
pecting loss (Excluding loss of the kind described
in Section II, and Including loss of the kind des-
cribed in Section IV) from an accident as herein
defined to an object described herein, occurring
during the policy period which is from May 23, 1939
to May 23, 1942, at 12 o'clock noon, standard time,
as to each of said dates, at the place where such
accident occurs, subject to a Limit per Accident
of Fifty Thousand Dollars ($50,000.00), as follows:

"SECTION I  To PAY the Assured for loss on the

property of the Assured directly damaged
by such accident (or, if the Company so
elects, to repair or replace such damaged
property), excluding (a) loss from fire
(or from the use of water or other means
to extinguish fire), (b) loss from an acci-
dent caused by fire, (c) loss from delay
or interruption of business or manufacturing
or process, (d) loss from lack of power,
light, heat, steam or refrigeration, and
(e) loss from any indirect result of an
accident;

"...

"SECTION III   To PAY, to the extent of any indemnity re-
maining after payment of all loss as may be
required under Sections I and II, such amounts
as the Assured shall become obligated to
pay by reason of the liability of the Assured
for loss on the property of others directly
damaged by such accident, including liability
for loss of use of such damaged property of
others; to DEFEND the Assured against any
claim or suit alleging such damage unless or
until the Company shall elect to effect settle-
ment thereof;

"SECTION IV   To PAY, to the extent of any indemnity re-
maining after payment of all loss as may
be required under Sections I, II and III,
if loss under Section IV is stated above
as included but not otherwise, such amounts
as the Assured shall become obligated to
pay by reason of the liability of the
Assured, including liability for loss of
services, on account of bodily injuries
(including death at any time resulting there-
from) sustained by any person and caused by
such accident, except that the indemnity
hereunder shall in no event apply to any
liability or obligation under any workmen's
compensation law; to PAY, if loss under
Section IV is stated above as included but
not otherwise, irrespective of the Limit
per Accident, for such immediate surgical
relief as shall be rendered at the time of
the accident; to DEFEND the Assured, if loss
under Section IV is stated above as included



but not otherwise, against any claim or suit alleging such liability unless or until the Company shall elect to effect settlement thereof; and

"SECTION V   To PAY, irrespective of the Limit per Accident, all costs taxed against the Assured in any legal proceeding defended by the Company in accordance with Section III or IV, all interest accruing after entry of judgment rendered in connection therewith up to the date of payment by the Company of its share of such judgment, all premium charges on attachment or appeal bonds required in such legal proceedings, and all expenses incurred by the Company for such defense; ..."

Schedules Nos. 1 and 2, attached to the policy and made a part thereof, describe respectively the steam and gas engines as the "objects" insured. On the back of each Schedule is printed the same definition of "object" and "accident." The definition of accident is:

"As respects any object described in this Schedule, 'Accident' shall mean a sudden and accidental breaking, deforming, burning out or rupturing of the object or any part thereof, which manifests itself at the time of its occurrence by immediately preventing continued operation or by immediately impairing the functions of the object and which necessitates repair or replacement before its operation can be resumed or its functions restored, but the breaking, deforming, burning or rupturing of any gasket or gland packing shall not constitute an accident, nor shall the depletion of material in any part of the object, due to pitting, corrosion or wear, be construed as an accident."

Under Section 1, the Company obligates itself "To pay the Assured for loss on the property of the Assured directly damaged by such accident (or, if the Company so elects, to repair or replace such damaged property)," excluding loss by fire and other named exceptions.

Section II has been excluded from the policy.



Section III obligates the Company to pay "such amounts as the Assured shall become obligated to pay by reason of the liability of the Assured for loss on property of others directly damaged by such accident, including liability for loss of use of such damaged property of others," and to defend the assured in event of a suit against him for such damages.

Section IV obligates the Company to pay "such amounts as the Assured shall become obligated to pay by reason of the liability of the Assured, including liability for loss of services, on account of bodily injuries (including death at any time resulting therefrom) sustained by any person and caused by such accident," except liability or obligation under any Workmen's Compensation law, and to pay surgical relief rendered at time of accident and to defend against any claims or suit, etc.

Section V obligates the Company to pay all costs taxed against the Assured in any legal proceeding defended by the Company in accordance with Sections III or IV, etc.

In Cooley's Briefs on the Law of Insurance (2nd Ed.), page 325, it is said:

"There are three classes of liability insurance -- insurance against liability for personal injury to employes, against liability for injuries to persons other than employes, and against liability for injuries to all classes of persons."

Again, on page 11, the author says:

"So far as insurance has been developed with reference to accidental injury to, or destruction of property, as by explosion of boilers, breakage of glass, and injury generally by accident, such as injury to an automobile due to collision, including injury to, and sickness and death of animals is known as casualty insurance."

It is said in Employer's Liability Assurance Corporation vs. Merrill, 155 Mass. 404, 29 N. E. 529, that accident insurance is confined to accidents resulting in injury to, or death of, human beings. Its field is not to insure



against loss or damage to property, though occasioned by accident."

> "'Casualty insurance' are words of quite frequent use, yet it cannot be said that their definition has been very accurately settled by the courts. Strictly and literally 'casualty' is perhaps to be limited to injuries which arise solely from accident without any element of conscious human design or intentional human agency; or, as it is sometimes expressed, inevitable accident, something not to be foreseen or guarded against. But in ordinary usage 'casualty,' like 'accident,' is quite commonly applied to losses and injuries which happen suddenly, unexpectedly, not in the usual course of events, and without design on part of the person suffering from the injury." Bankers' Mutual Casualty Co. vs. First National Bank of Council Bluffs, 108 N.W. 1046, 131 Iowa 456.

General Casualty companies may be incorporated under the provisions of Article 4989, Revised Statutes, and may include in their articles of incorporation any one or all of the eleven purposes enumerated in said Article, as well as others if authorized by Section 12 thereof. Section 2 reads:

> "To insure against loss or damage resulting from accident to or injury sustained by an employe or other person for which accident or injury the assured is liable."

Under this Section the company may write insurance against liability for personal injury sustained by an employe resulting from accident, commonly known as "employer's liability insurance." It may also insure against liability for injuries to persons other than employes resulting from accident for which the assured is liable.

Section 8 provides:

> "To insure against loss or damages resulting from accident to or injury suffered by any person for which loss and damage the insured is liable; excepting employers liability insurance as authorized under Subdivision 2 of this Article."

Under this Section the company may write the same kind of insurance provided for in Section 2, except employer's liability insurance. The insurance written under sections 2 and 8 may be properly called "liability insurance."

Section 5 reads:

"To insure against loss from injury to person or property which results accidentally from steam boilers, elevators, electrical devices, engines and all machinery and appliances used in connection therewith or operated thereby; and to insure boilers, elevators, electrical devices, engines, machinery and appliances."

The policy under consideration, while written by a foreign company, evidently with a permit to do business in this State, is one covering both injury to property and to any person sustained as a result of an accident. It embraces both casualty and liability clauses, such as may be written under Section 5, quoted above.

It is apparent that the insurance for which the Company has contracted to pay loss on the assured's property which is occasioned by accident is casualty, not liability insurance. Therefore, the premium on said policy cannot be legally paid out of an appropriation to pay "liability insurance." The Legislature is presumed to have known the difference between the two kinds of insurance and the character of risks belonging to each.

While we have decided that the claim for the premium on this policy cannot be paid out of the appropriation referred to, and that the same was properly refused by the Comptroller, we will discuss the character of the insurance embraced in Sections 3, 4, and 5.

If it be conceded that the obligation assumed by the company in said Sections may be classed as "liability insurance," then such obligations are absolutely value-less to the assured for reasons which we will now consider.

In the first place, the actual beneficiary is not the "Texas Prison Board and/or Texas Prison System and/or Its Elected or Appointed Officers," but the State of Texas. It is the State's property that is described in the policy and it would be its property that would be damaged or

destroyed in the event of an accident.  The claim for
the premium is against the State's funds.  The State
of Texas should have been named in the policy as the
"Assured."  The foregoing statement, of course, applies
to the policy as a whole.

Under Sections 3 and 4, the Company is only obligated
to pay to the Assured (which we must assume is the State
of Texas) such amounts as the Assured shall become obli-
gated to pay by reason of its liability for loss on the
property of others, or for personal injuries to others,
etc.  The effect of this agreement is that if there is
no liability on the part of the State, there is none
on the part of the Company.  The Company is only obligat-
ed to pay to the State or to those who suffer loss under
the terms of the contract such sums as the State shall
be obligated to pay by reason of its liability to such third
persons.

It is now the established law of this State that
the State is not liable for the torts or negligence of
its officers, agents or servants engaged in the performance
of a governmental function unless it has first expressly
assumed such liability.  Brook v. State, 68 S. W. (2d)
534, error refused; Gother v. State et al, 106 S. W. (2d)
1104, and the authorities there cited.  Such liability,
the State has never assumed.  Brooks v. State, supra.
It has provided Workmen's Compensation Insurance for cer-
tain classes of the Highway Department's employes, (Art.
6674s et seq., Vernon's Texas Statutes, 1938 Supp.) which
statutes have no application here.

> "The erection and operation of prisons
> and jails, whether by the State, a county or
> a municipality, is purely a governmental func-
> tion, being an indispensable part of the admin-
> istration of the criminal law."  Corbett v.
> St. Vincent's Industrial School, 177 N. Y. 16,
> 68 N. E. 997; 21 R.C.L. 1168.

It is also a well established rule of law that in the
absence of a statute, a state is not liable to a convict
for injuries sustained by him as a result of the negli-
gence of a prison employe, whether the convict is working
outside or inside the place of imprisonment.  Clodfelter

vs. State, 86 N. C. 51, 41 Am. Rep. 440; Lewis v. State, 96 N. Y. 71, 41 Am. Rep. 607; 21 R. C. L. 1182.

Should an "accident" occur to the "objects" insured, resulting in loss of property to others, in injuries to convicts, employes, and to other persons, what is the State's liability?

"Accident" is an event which has happened without a party's foresight or foreknowledge or without "fault" of the person who is charged. It is a catastrophe which has occured without "negligence" on the part of either party. 30 Tex. Jur. 673, Sec. 26. In the case of Dallas Railway & Terminal Co. vs. Allen, 43 S. W. (2d) 165, 170, error dismissed, the court said:

> "By accident is meant such an unexpected catastrophe as occurs without any one's being to blame for it; that is, without anybody's being guilty of negligence in doing or permitting to be done or omitting to do the particular thing that caused such casualty."

The rule of non-liability for personal injuries received or damages to property sustained as result of accident is announced by the Commission of Appeals in the case of Ebersole vs. Sapp, 208 S. W. 156, to be:

> "If the injury resulting from the act could have been reasonably anticipated or foreseen by an ordinary prudent person, in the exercise of ordinary care, the occurrence is not accidental. If, however, the injury could not have been foreseen or anticipated, it is an accident for which there is no legal redress."

When an accident occurs resulting in injury to property or person there is no legal liability on the part of any one, hence no legal redress. Therefore, it naturally follows that the State would not be liable for damage done to property owned by another, or for personal injuries sustained by its employes, convicts, or any other person as a result of an "accident," whether such accident was unavoidable or due to negligence. Therefore, under all sections, except No. I, of the policy, if the State

Mr. D. C. Stakes, Page #10.

is not so liable, the Company is not liable.  The protection which the policy attempts to give the State is no protection whatever.  Should the State pay the premium, it would pay for only a supposed protection, something it does not get, does not need, and already has because of its sovereignty. State v. Brannan et ux, 111 S. W. (2d) 347, error refused.

You are advised that it is our opinion that the premium on the policy under consideration may not be legally paid from the current appropriation made to the Texas Prison System to pay "liability insurance premiums."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Bruce W. Bryant
Bruce W. Bryant
Assistant

APPROVED JUL 26, 1959
BWB:pbp

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY T.D.R
CHAIRMAN